Prob12D
D/NV Form
Rev. June 2014

**United States District Court**
**for**
**the District of Nevada**

**REQUEST FOR HEARING**
**TO MODIFY CONDITIONS OR TERMS OF SUPERVISION**

Name of Offender: **Rudolph Clemens**

Case Number: **2:21CR00201**

Name of Sentencing Judicial Officer: **Honorable George H. Wu**

Date of Original Sentence: **January 28, 2008**

Original Offense: **Distribution of Cocaine Base (Crack Cocaine)**

Original Sentence: **150 Months prison, followed by 60 Months TSR.**

Date Supervision Commenced: **March 23, 2018**

Date Jurisdiction Transferred to District of Nevada: **July 16, 2021**

Name of Assigned Judicial Officer: **Honorable Andrew P. Gordon**

**PETITIONING THE COURT**

The offender not having waived a hearing, the probation officer requests that a summons be issued and a hearing held to modify the conditions of supervision as follows:

1. **Home Confinement with Location Monitoring** – **You will be monitored by the form of location monitoring technology indicated below for a period of 60 days, and you must follow the rules and regulations of the location monitoring program.**

   ☒ **GPS Monitoring (including hybrid GPS).**

   **This form of location monitoring technology will be used to monitor the following restriction on your movement in the community (choose one):**

   ☒ **You are restricted to your residence every day from 6:00 PM to 8:00 AM, or as directed by the probation officer.**

**RE: Rudolph Clemens**

Prob12D
D/NV Form
Rev. June 2014

## CAUSE

On January 28, 2008, Rudolph Clemens was sentenced by the Honorable George H. Wu, United States District Judge for the Central District of California to 150 months custody followed by 5 years of supervised release for committing the offense of Distribution of Cocaine Base (Crack Cocaine). On March 23, 2018, Mr. Clemens commenced his supervised release in the District of Nevada.

Since starting supervision, Clemens has been unemployed, and his only source of verifiable income is $795 per month derived from SSDI benefits. Clemens reports he receives an additional $500-$1000 cash working at EMF Motors. Clemens also reported that his friend Victor Drake pays him upwards of $500 for referring clients to purchase vehicles from him. According to Clemens, one of Drake's businesses involves acquiring vehicles from auctions and selling them.

As a condition of supervision, Clemens must provide the probation office with an accurate financial statement with supporting documentation to include all assets, income, and expenses. In addition, he shall not apply for a loan or open any lines of credit without the approval of the probation officer. Moreover, Clemens is required to maintain one personal checking account and all income, monetary gains, or other pecuniary proceeds should be deposited into this account, which shall be used for payment of all personal expenses. A recent financial investigation concluded that Clemens is in violation of this condition, and has obtained multiple lines of credit, installment loans, auto lease, and an auto loan without the permission of his probation officer.

Specifically, Clemens reports an account with Navy Federal Credit Union. In reviewing bank statements for the past six (6) months there is no indication of any income and/or pecuniary proceeds from his reported cash employment with the car lot being deposited into the account; and his disability income is not deposited into the account. Furthermore, there is no indication personal expenses (gas, utilities, groceries, etc.) are being paid from this account. The account has limited activity.

As noted, while under supervision, Clemens has obtained multiple credit cards, loans, auto loan, and an auto lease without the approval of the probation officer. Clemens credit reports reveals the following accounts opened while under supervision: American Express ($2000 limit), Capital One ($1650 limit), Synchrony Bank/Care ($500 limit), Discover ($8500 limit), Wells Fargo Installment Loan ($13,900) with monthly payments of $486, Navy Federal Credit Installment loan ($12,000) with monthly payments of $306, Auto Loan ($28,706) with monthly payments of $512, and VW auto lease ($30,887) with monthly payments of $853.

Clemens reports that his friend, Victor Drake has been helping him build his credit and has obtained all loans/lines of credit on his behalf; and except for his personal vehicle (Dodge Charger) Drake is benefitting from all loans/credit cards. Drake is in possession of the Audi (VW lease), all credit cards with exception of Capital One, and, according to Clemens, was given the monies from the two installment loans. Clemens reports Drake is making payments on all loans/credit cards obtained in his name. Based on Clemens' verifiable income it is questionable how he would be approved for lines of credit, installment loans, credit cards, and an auto lease. It

**RE: Rudolph Clemens**

Prob12D
D/NV Form
Rev. June 2014

stands to reason that no reputable financial institution would approve loans in these amounts based on Clemens' limited verifiable income, which is only $795 per month, and no employment. The minimum monthly payments on all loans/credit cards well exceed his monthly income. It certainly gives rise to suspicion that Clemens is committing some type of fraud by falsifying credit applications and/or producing fictitious employment/income verification in support of his application for these loans.

On March 5, 2021, Clemens was contacted by an officer with the Las Vegas Metropolitan Police Department (LVMPD) during a traffic stop. During the stop Clemens was cited for committing the following traffic offense: Driver Failing to Obey Red Traffic Light, violation of Statute 484B.307, a misdemeanor, in Las Vegas Traffic Case LVM0650592. Clemens failed to inform the undersigned officer with 72 hours regarding his traffic offenses and law enforcement contact.

On Friday April 9, 2021, Clemens was contacted by the undersigned officer at his residence. Upon entering Clemens' apartment, a strong odor of marijuana was detected. Clemens claimed his daughter had been smoking marijuana in his home days prior. The strength of the odor was indicative of marijuana in the residence at the time and not the stale lingering odor from someone smoking marijuana days before.

On April 27, 2021, SUSPO Fredlund spoke with Victor Drake. Drake reported that he is self-employed and operates a marketing business and a credit repair business. Drake stated Clemens helps recruit clients for his credit repair business wherein Drake pays Clemens between $300-$400 per referral. Drake made no mention of a car business. This contradicts Clemens' statement in that he reported Drake pays him for referring clients to purchase vehicles from Drake; and made no mention of receiving monies from Drake for referrals to Drake's credit repair business. Drake further stated he makes payments on the credit cards, the personal loans, and the Audi lease. Drake stated that Clemens pays the Dodge Charger loan, however, he will occasionally provide financial assistance to cover this loan. Except for Clemens' Capital one credit card and auto loan, documents provided by Clemens and Drake appear to support Drake pays all credit cards, Wells Fargo loan, and lease payments on the Audi. However, there is no verification to support Drake's claim that he is paying the Navy Federal Credit Union loan as payments come out of Clemens' account with NFCU. Drake further reported he completed all application online on behalf of Clemens and reports Clemens was not required to provide any verification of income and/or employment to the various creditors. Copies of submitted applications were requested but never provided.

In reviewing Clemens' Navy Federal Credit Union (NFCU) bank statements, since August 2020 Clemens has transferred $14,085 to Drake. During this same period only $2,040 was received from Drake. Specifically, on September 28, 2020, Clemens deposits $2,000 and then immediately transfers the entire amount to Drake. On October 5, 2020, Clemens deposits $3,670 and then immediately transfers $3,500 to Drake. On October 13, 2020, Clemens deposits $3,500 and then immediately transfers the entire amount to Drake. On October 16, 2020, Clemens deposits $2,500 and then immediately transfers the entire amount to Drake. On October 19, 2020, Clemens deposits $1,400 and then immediately transfers the entire amount to Drake. On October 23, 2020, Clemens deposits $400 and then immediately transfers the entire amount to

**RE: Rudolph Clemens**

Prob12D
D/NV Form
Rev. June 2014

Drake. On October 28, 2020, Clemens deposits $450 and then immediately transfers the entire amount to Drake. On November 9, 2020, Clemens deposits $225 and then transfers $230 to Drake on November 10, 2020. Clemens' statement that Drake is covering all expenses and providing him with additional financial support is unfounded. As noted, it appears Clemens is the one transferring funds to Drake. Moreover, loan payments for NFCU personal loan is being paid by Clemens from this account. There is no verification Drake is paying this loan as represented by Clemens and Drake.

As noted, Clemens reports to receiving between $500-$1000 per month from EMF motors for referrals and detailing cars on the lot. Clemens was requested to provide copies of pay stubs and/or checks but claims he is paid in cash. Clemens stated he is paid in cash to avoid compromising his disability benefits. Clemens was further directed to provide detailed ledger from his employer to list all monies earned. Clemens failed to produce, simply indicating he is paid in cash. This additional income from EMF is not substantiated. Clemens is living beyond his verifiable income. Clemens' auto loan, apartment lease ($920/month), and basic living expenses (utilities, gas, food) exceed his verifiable income.

On May 12, 2021, Clemens reported to the office and met with SUSPO Fredlund for additional questions regarding his finances. Clemens now states he receives, and has been receiving, financial support from various family members, indicating his family members "have lots of money". Clemens went on to state that he previously "took care of them" and his family has no issues giving him money when needed. Clemens also mentioned for the first time that he has referred approximately 40-50 family members/friends to Drake for credit repair and in return has received monies from Drake. However, documentation received from Drake on May 4, 2021 indicates Clemens only referred six (6) clients to him for credit repair services and in return Drake paid Clemens $2950.

During the above-noted office visit Clemens was provided a detailed letter with an attached cash inflow statement directing him to provide various financial documents to the undersigned officer within the first five days of each month. Specifically, this form requires Clemens to document all income, "monetary gains," or other pecuniary proceeds received during the reported month. In addition, Clemens was required to provide verification of any monies/income received. It was explained to him that verification must be in the form of a copy of a check received from his employer, and/or a letter from his employer detailing dates/amounts paid to him, or a letter from any family member/friend who provides cash to him during any given month. Clemens was further directed to deposit all income/monies received into his checking account. In addition to providing the above he was directed to submit a copy of his monthly bank statement accounting for all monies received during the reporting month.

On June 4, 2021, Clemens failed to follow instructions that were provided to him by SUSPO Fredlund. Clemens submitted the inflow statement claiming monies from EMF Motors and Victor Drake but did not provide copies of the checks (as requested in the letter and meeting with him) and did not provide bank statements verifying the deposits.

**RE: Rudolph Clemens**

Prob12D
D/NV Form
Rev. June 2014

On June 21, 2021, SUSPO Fredlund again reminded Clemens to provide copies of his bank statements for May, along with copies of two checks purportedly issued to him from EMF Auto Sales. Clemens has yet to provide.

Clemens is in violation of his release conditions by obtaining loans and credit without approval; failure to disclose loans, credit cards, and an auto lease on his Declaration of Offender Net Worth and Cash Flow Statement; failure to disclose his income and employment with EMF motors on his monthly supervision reports. In fact, Clemens reports he is unemployed on his monthly supervision reports.

During an office visit on March 25, 2021, Clemens gave SUSPO Fredlund verbal consent to search his cellular phone. Based on the review of text messages, there is an indication that Clemens is selling marijuana, which could account for unverified income and/or living beyond his means. It appears Clemens may delete a lot of text messages, but during the phone inspection SUSPO Fredlund observed the following:

A text from "Little Nasty" on March 24, 2021 where this individual inquires if Clemens got a room and he responds "yep" and states Motel 6. In another series of text messages between "Little Nasty" and Clemens, "Little Nasty" states "I need sone tree tho. Ill probably walk that way. U want me to walk or what". Clemens responds, "I'm coming to you". Based on the text message it appears to be the Motel 6 on Tropicana, just East of the Las Vegas Boulevard, which is commonly used for prostitution and drug related activities. "Tree" is a term used to reference marijuana.

In another text with "Money" Clemens states, "I really need you to test this bud". "Bud" is a term used to reference marijuana.

Another text with "Mia" on March 16, 2021 reads, "I'm a come get you next week if its cool. Im going to Arkansas for a video shoot with Gooney". This text implies Clemens may have left the district and travelled to Arkansas without permission.

Another text with a "David" states "you home boss?" wherein Clemens responds "Yep". "David" then states "getting cash rn then be home can I pick up a 1/8". Clemens responds, "Yup Just come to the door". An 1/8th is a term commonly used to reference one eighth of an ounce, referring to measurement of drugs.

In another text with a "Gee" on March 25, 2021, "Gee" states, "I need some green". Green is a term used to reference marijuana.

In another text message with "Allen", "Allen" states, "Whats up bro its allen from smiths. Im ready for that 8th." Clemens responds, "Can you come down to the kaleidoscopes". An 8th is commonly used to reference a 1/8th of an ounce in the measurement of drugs.

On October 8, text messages between Clemens and an unknown person with phone # of (725) 400-7430 states "You got fire or regular". Clemens responds, " I don't know what regular is you

**RE: Rudolph Clemens**

Prob12D
D/NV Form
Rev. June 2014

got to go to dispensary to get regular I keep telling you to charge me too much did you get an eighth and I get questions like that that's crazy Spoon".

It should be noted that in 2019, an unknown female called the probation officer and reported that Clemens was selling marijuana. At that time, we had insufficient information to act on that tip.

On June 21, 2021, a search was conducted at Clemens' home of record. No contraband was located during the search. Senior USPO Goldner located an empty jar in a kitchen cabinet that wreaked of marijuana. It is also noted the apartment had a strong odor of marijuana. A smart phone was in Clemens' closet which contained a photo of a bag of marijuana situated on his kitchen countertop. The photo was taken August 15, 2020.

SUSPO Fredlund conducted a review of photos in Clemens' iPhone which contained several photos of marijuana that were taken in his residence. A few photos of marijuana were taken as recently as the day prior (June 20, 2021). Also, Sr. USPO Goldner located a text thread on Clemens' iPhone that occurred the day prior (June 20, 2021) between Clemens and a person identified in his contacts as "Dreads" wherein Clemens states, "What You need", then Clemens' states "Own (sic) My Way". Dreads responds, "A Quarter", Dreads then follows-up with "By any change (sic) U got change for a $100?" which Clemens responds "Yes".

Clemens was confronted regarding the photos of marijuana on his phone and the text message between him and "Dreads". Clemens admitted marijuana has been in his apartment, claiming his children and other "associates' he hangs around with use/sale marijuana. Clemens admitted the text message between him, and "Dreads" was regarding "weed" but denies he delivered any marijuana to him. Clemens stated he has facilitated marijuana sales while under supervised release by acting as the "middleman" but denies he is distributing marijuana. Clemens further admitted many of his associates are involved in the distribution/sales of marijuana and he has assisted by putting them in contact with individuals who have purchased.

To address Clemens' violations, Clemens was presented with a Probation Form 49, Waiver of Hearing to Modify Conditions of Supervised Release to include GPS curfew with location monitoring for 60 days. Clemens declined to sign and requested a hearing. As such, the probation office is requesting the issuance of a summons, and a hearing be held to address the violations contained within this report.

**RE: Rudolph Clemens**

Prob12D
D/NV Form
Rev. June 2014

I declare under penalty of perjury that the information contained herein is true and correct,

Executed on **July 21, 2021**

Digitally signed by
Nickie Pipilakis
Date: 2021.07.21
11:50:03 -07'00'

Nickie Pipilakis
United States Probation Officer

Approved:

Digitally signed by Todd
Fredlund
Date: 2021.07.21 11:48:14
-07'00'

Todd J. Fredlund
Supervisory United States Probation Officer

## THE COURT ORDERS

☐   No Action.

☑   The issuance of a summons.

☐   Other

Signature of Judicial Officer

July 21, 2021
Date